UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRANCH BANKING AND TRUST COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>JAMES W. RAPPAPORT, *et al.*,<br><br>    Defendants. | Civil Action No. 13-510 (JEB) |

**MEMORANDUM OPINION**

This case concerns two loans that Plaintiff Branch Banking and Trust Company issued to six different companies affiliated with Specialty Hospitals of America, LLC. Defendants James Rappaport and Robert Rummler, respectively the Chairman and CEO of SHA, personally guaranteed both loans up to certain caps for principal as well as interest and fees. Upon the various borrowers' defaults, BB&T brought this suit seeking payment from Defendants on the guarantees. BB&T now moves for summary judgment, arguing that Defendants' liability and the amounts they owe are not in dispute. As Defendants largely conceded at the Motion hearing the propriety of partial summary judgment as to the principal owed – instead contesting only the interest and fees – and Plaintiff agreed to such resolution, the Court will grant the Motion in part and deny it in part.

**I.    Background**

Viewing the facts, which Defendants "take no issue with," see Opp. at 3, in the light most favorable to Defendants, on March 28, 2008, six organizations associated with SHA ("Borrowers") took out a $7,500,000 line of credit ("the Revolving Note") with BB&T, which

1

was later increased to $10,500,000.  See Mot., Affidavit of Regina Barry, ¶ 4.  The terms of this loan, including the rate of interest, were modified several times.  Id., ¶ 5.  Of relevance here, Borrowers agreed to make monthly payments of accrued interest beginning on May 1, 2008, through December 31, 2011, at which point all amounts remaining, including the principal, would become immediately due.  Id., ¶ 7.  Borrowers additionally agreed to pay late charges of 5% of the overdue amount and "all costs and expenses incurred by BB&T in connection with collecting or attempting to collect" the sums due under the Note.  Id., ¶¶ 8-9.  Borrowers, however, did not pay off the Revolving Note at the date of maturity, December 31, 2011.  Id., ¶ 10.  As of September 9, 2013, Borrowers owed $6,681,643.61 in principal and $537,223.35 in interest on this Note.  See Reply, Supplemental Affidavit of Regina Barry, ¶ 4.

Borrowers also took out a $35,000,000 loan from BB&T ("the Term Note") with specified interest and other conditions.  See Barry Aff., ¶ 13.  On this loan, they agreed to make monthly payments beginning on May 1, 2008, through April 1, 2015.  Id., ¶ 16.  The Term Note also contained an acceleration provision in the event of default, whereby BB&T could accelerate and declare immediately due and payable all amounts owed under the Term Note.  Id., ¶ 21.  Borrowers failed to make payment under the Term Note, and BB&T exercised its acceleration rights.  Id., ¶¶ 20-21.  As of September 9, 2013, Borrowers owed $28,127,952.81 in principal and $1,609,380.07 in interest on this Note.  See Supp. Barry Aff., ¶ 4.

Defendants Rappaport and Rummler guaranteed both Notes.  See Barry Aff., ¶ 23.  Rappaport's guarantee, however, "is limited to $6,000,000.00 plus any and all accrued and unpaid interest, fees, charges and costs . . . not to exceed $1,000,000.00."  Id., ¶ 25.  Rummler's guarantee "is limited to $2,000,000.00 plus any and all accrued and unpaid interest, fees, charges and costs . . . not to exceed $1,000,000.00."  Id., ¶ 26.

BB&T entered into a forbearance agreement with Defendants on May 31, 2012, pursuant to which they were required to pay $2,000,000 to BB&T by July 20, 2012. Id., ¶¶ 27-29. They did not make this payment. Id., ¶ 30. Fed up, on April 15, 2013, BB&T filed this action against Defendants, seeking the $10,000,000 they had personally guaranteed. Plaintiff has now moved for summary judgment. After the parties submitted their briefs, the Court held a hearing on the Motion on October 11.

**II.     Legal Standard**

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). Summary judgment may be rendered on a "claim or defense . . . or [a] part of each claim or defense." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). "A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." Holcomb, 433 F.3d at 895 (quoting Liberty Lobby, Inc., 477 U.S. at 248). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See id. The party seeking summary judgment "bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified." Taxpayers Watchdog, Inc., v. Stanley, 819 F.2d 294, 297 (D.C. Cir. 1987). "Until a movant has met its burden, the opponent of a summary judgment motion is under no obligation to present any evidence." Gray v. Greyhound Lines, East, 545 F.2d 169, 174 (D.C. Cir. 1976).

When a motion for summary judgment is under consideration, "the evidence of the non-movant[s] is to be believed, and all justifiable inferences are to be drawn in [their] favor." Liberty Lobby, Inc., 477 U.S. at 255; see also Mastro v. Potomac Elec. Power Co., 447 F.3d 843, 850 (D.C. Cir. 2006); Aka v. Washington Hospital Center, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (*en banc*); Washington Post Co. v. U.S. Dep't of Health and Human Services, 865 F.2d 320, 325 (D.C. Cir. 1989). On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). He is required to provide evidence that would permit a reasonable jury to find in his favor. Laningham v. United States Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987). If the nonmovants' evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. Liberty Lobby, Inc., 477 U.S. at 249-50; see Scott v. Harris, 550 U.S. 372, 380 (2007) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'") (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

### III. Analysis

In moving for summary judgment, BB&T argues it is undisputed that Defendants guaranteed the loans and that they now owe the money. Defendants counter with two arguments: First, the District of Columbia's takeover of United Medical Nursing Center may somehow

4

reduce the amount of principal due. Second, BB&T has not properly itemized the interest and fees due. The Court will address each in turn.

    A. UMNC Takeover

While not contesting the validity of the guarantees or the amount of principal owed, Defendants contend that the takeover of UMNC – an SHA subsidiary – by the District of Columbia's Not-for-Profit Hospital Corporation could yield an offset because BB&T may have received funds from the NFPHC. As discussed earlier, SHA-affiliated corporations owe over $34 million in principal plus over $2 million in interest and fees. Defendants have guaranteed up to $8 million in principal and up to $2 million in interest and fees. If the amount guaranteed is less than the amount still owed, the UMNC takeover is irrelevant as an offset. BB&T, therefore, must have received over $26 million – *i.e.*, the difference between the full amounts owed and those guaranteed – from the District's NFPHC. Yet, Defendants' counsel admitted at the October 11th hearing that any offset from the UMNC takeover would not even approach that sum. The takeover thus has no effect on the current Motion.

To the extent that Defendants' counsel attempted to proffer additional facts to the Court at the hearing on other potential offsets, a summary judgment hearing is neither the time nor the place for such factual supplementation, particularly via attorney proffer. See Fed. R. Civ. P. 56(c) (party must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" to support its factual positions) (emphasis added). As the parties agree that the UMNC takeover does not reduce the maximum amount of principal Defendants guaranteed, the Court will grant summary judgment as to the principal owed.

B. <u>Itemized Interest</u>

At the hearing, in conceding that partial summary judgment was proper as to the <u>principal</u>, Defendants reiterated the position in their briefs that judgment should not be entered as to the <u>interest</u> owed without "an itemized statement or other document detailing the amounts properly payable under" the guarantees. <u>See</u> Opp. at 3, 7-8. While the Court is aware of some cases in which judgment has been entered concerning interest based only on the bare assertions of an affiant as to the amount due, <u>see, e.g.</u>, <u>Branch Banking & Trust Co. v. Broaderip</u>, No. 10-00289, 2011 WL 3511774 (S.D. Ala. Aug. 11, 2011), the Court need not follow that course. As Plaintiff's counsel at the hearing agreed to partial summary judgment on the principal with the opportunity to file a subsequent motion with more supporting documentation on the interest, this is the result that should obtain here.

**IV.     Conclusion**

For the foregoing reasons, the Court will grant in part, and deny in part BB&T's Motion for Summary Judgment. A separate Order consistent with this Opinion will be issued this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: <u>October 16, 2013</u>